ERIN C. DYER, ISB #10700
CRAIG SWAPP & ASSOCIATES
16201 East Indiana Avenue, Suite 1900
Spokane Valley, WA 99216
Telephone: (509) 252-5037
Facsimile: (509) 252-5038
E-mail: erin.dyer@craigswapp.com

HUMBERTO M. GUIZAR, ESQ.,
CHRISTIAN CONTRERAS, ESQ
THE LAW OFFICES OF HUMBERTO GUIZAR
A PROFESSIONAL CORPORATION
3500 W. Beverly Blvd.,
Montebello, California 90640
Telephone: (323) 725-1151
Facsimile: (323) 597-0101
E-mail: hguizar@ghclegal.com
E-mail: cc@Contreras-Law.com
*(seeking admission Pro Hac Vice)*

Attorneys for Plaintiff, MELISSA WALTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| MELISSA WALTON, individually and as successor in interest to ZACHARY SNOW, <br><br> PLAINTIFF, <br><br> vs. <br><br> CITY OF BOISE; OFFICER M. JACOBS; OFFICER C. SNODDERLY; and DOES 1-10 <br><br> DEFENDANTS. | Case No. <br><br><br> COMPLAINT FOR DAMAGES <br><br> DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1. This is a wrongful death lawsuit stemming from the shooting death of ZACHARY SNOW on October 27, 2021 in Downtown Boise, Idaho by Boise Police Department Officers M. JACOBS and C. SNODDERLY.

**JURISDICTION & VENUE**

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of Idaho. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper within the Idaho District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

**PARTIES**

4.  Plaintiff MELISSA WALTON was the mother of ZACHARY SNOW and brings this lawsuit individually and as successor in interest to ZACHARY SNOW.

5.  Defendant CITY OF BOISE (hereinafter sometimes "CITY") is municipal entity of the State of Idaho with the capacity to sue and be sued. Defendant CITY is responsible for the actions, omissions, policies, procedures, practices and customs of its officers, and its agents and employees. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for the acts and omission of Defendants M. JACOBS and C. SNODDERLY.

6.  Defendants M. JACOBS and C. SNODDERLY and Does 1 Through 10 were employees of the CITY. At all times relevant, Defendants . JACOBS and C. SNODDERLY, and Does 1 Through 10 were an employee and/or agent of Defendant CITY and each of these individual defendants acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, as well as under the color of the statutes and regulations of the State of Idaho.

7.  The true names of defendants Does 1 Through 10, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

8.  At all times relevant to the facts alleged herein, Defendants M. JACOBS and C. SNODDERLY, and Does 1 Through 10, are duly appointed, qualified and acting officers, employees, and/or agents of CITY, employed as such by Defendants, and acting within the course and scope of their employment and/or agency and under color of state law. Each of the Defendants

and Doe Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiff's rights, to initiate and maintain adequate supervision, security, training, compliance with responsibilities and duties, and staffing; by failing to maintain proper and adequate policies, procedures and protocols; and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, and employees under their direction and control.

9. Each of the Defendants caused and is responsible for the unlawful conduct and resulting, by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiff's rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control. Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, joint, and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein. Plaintiff will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained. Each of Defendants is the agent of the other and the actions of each of the Defendants were ratified by the other Defendants.

10. Whenever and wherever reference is made in this Complaint to any act by Defendants and Doe Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendants individually, jointly or severally

## GENERAL ALLEGATIONS

11. On October 27, 2021, Plaintiff MELISSA WALTON called the police to tell them her son, ZACHARY SNOW, was struggling and suicidal. ZACHARY SNOW's ex-girlfriend contacted Plaintiff MELISSA WALTON and said he was hurting after they separated and he was suicidal.

12. Since Decedent ZACHARY SNOW was young, he battled mental illness.

13. Indeed, doctors diagnosed ZACHARY SNOW with anti-social personality disorder at the age 18. ZACHARY SNOW was prescribed medication as a result.

14. The Boise Police Department said officers knew about ZACHARY SNOW's record and had dealt with him in the past.

15. October 27, 2021, knowing of ZACHARY SNOW's mental health issues and encounters in the past, Boise Police Department officers received a call from MELISSA WALTON about ZACHARY SNOW being suicidal.

16. They came in contact with him again the evening of October 27, 2021 after Walton called dispatch, saying her son threatened to take his own life.

17. Plaintiff MELISSA WALTON had a video of ZACHARY SNOW standing on top of a building saying goodbye. Plaintiff MELISSA WALTON told SNOW that she was calling the police.

18. Plaintiff MELISSA WALTON told police, dispatch around 5 p.m. on October 27, 2021 that ZACHARY SNOW was on top of a building in downtown Boise.

19. Plaintiff MELISSA WALTON spoke with ZACHARY SNOW after calling police and said, 'Hey bud, I called police. They're looking for you. Go talk to them, they're going to help you.'"

20. Thereafter, Plaintiff MELISSA WALTON spoke with a BOISE police officer and explained that her son was depressed, off his meds and he was armed.

21. Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, subsequently located ZACHARY SNOW near the intersection of Capitol Boulevard and Myrtle Street.

22. When Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, located ZACHARY SNOW, SNOW was in an empty lot not committing a crime, not harming anyone, not threatening to harm anyone, nor doing anything which caused the officers to reasonably believe that SNOW was a threat to the officers or a member of the public.

23. In fact, ZACHARY SNOW was not armed with a weapon when Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, located him and the officers were also advised by Plaintiff MELISSA WALTON that SNOW was unarmed.

24. Instead of establishing a perimeter or having a tactical plan as to how to approach SNOW, Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, rushed into the situation contrary to their training and contrary to standard police practices.

25. When Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, rushed to attack SNOW, there was no exigent circumstance nor any other reasonable reason to rush in.

26. Time was on the side of Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive.

27. As Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, rushed SNOW, SNOW does not immediately submit to the officers.

28. Instead of showing a reverence to the human life of SNOW, Defendants M. JACOBS and C. SNODDERLY opened fire on SNOW and kill SNOW.

29. Defendants M. JACOBS and C. SNODDERLY shot ZACHARY SNOW several times.

30. Defendants M. JACOBS and C. SNODDERLY shot and killed a man who was experiencing a mental health crisis in violation of their training and in violation of SNOW's right to be free from unreasonable seizures.

## FIRST CLAIM FOR RELIEF
## EXCESSIVE FORCE IN VIOLATION
## OF THE FOURTH AMENDMENT
## (42 U.S.C. § 1983)

**(Plaintiff, as successor in interest, Against Defendants OFFICER M. JACOBS; OFFICER C. SNODDERLY; and DOES 1-10)**

31. Plaintiff repeats and re-alleges each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

32. Under the Fourth Amendment of the United States Constitution, ZACHARY SNOW had a right to be free from unreasonable searches and seizures.

33. Defendants M. JACOBS and C. SNODDERLY used excessive force against SNOW by unnecessarily and unreasonably shooting him, while acting under color of law, and in clear and well-established violation of the Fourth Amendment to the United States Constitution.

34. Clearly, Defendants M. JACOBS and C. SNODDERLY violated SNOW's Fourth Amendment rights when they used his firearm, deadly force, in a reckless way, and with willful and conscious disregard, when they shot SNOW, a young man who posed no threat of harm to Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive, at the time he was shot. Such use of deadly force by Defendants M. JACOBS and C. SNODDERLY, and Does 1-10, inclusive was clearly unreasonable, not warranted under the totality of the circumstances, and lead to the shooting and killing of SNOW.

35. Under the same or similar circumstances, no reasonable officer would have used force of the manner and to the extent as that used by Defendants against SNOW. SNOW was not an imminent threat of death or serious bodily injury to any officers or anyone else.

36. Accordingly, MELISSA WALTON, as successors-in-interest to SNOW, claims damages under 42 U.S.C. § 1988 for SNOW's loss of value of life, pre-death human suffering, and all attorneys' fees and costs yet incurred and yet to be incurred by MELISSA WALTON in presenting, maintaining, and prosecuting this action, under 42 U.S.C. § 1988.

37. Further, the conduct of Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, willful, and conscious disregard of SNOW's rights and safety subjected him to cruel and unjust hardship in the moments leading up to and including his death. Therefore, Defendants' conduct also amounted to a malicious and/or oppressive for which MELISSA WALTON is further entitled to recover punitive damages.

## SECOND CLAIM FOR RELIEF

## FOR VIOLATION OF FOURTEENTH AMENDMENT (DUE PROCESS) - INTERFERENCE WITH FAMILIAL RELATIONSHIP

## (42 U.S.C. § 1983)

### (Plaintiff, individually, Against Defendants OFFICER M. JACOBS; OFFICER C. SNODDERLY; and DOES 1-10)

38. Plaintiff repeats and re-alleges each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

39. The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unreasonable state interference in their familial relations. Indeed, Plaintiff MELISSA WALTON, individually, has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States

Constitution to be free from state actions that would deprive them of life, liberty, or property including the right of familial relationship in such a manner as to shock the conscience by being deliberately indifferent to the constitutional rights of Plaintiff or by committing such violation with a purpose to harm unrelated to any legitimate law enforcement objective.

40.     As described in the previous claim for relief, the shooting and killing of SNOW was objectively unreasonable under the circumstances of his encounter with Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, and in violation of constitutional limits on use of deadly force by police. Therefore, Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, acted with deliberate indifference to the rights, safety, and wellbeing of Decedent SNOW and his family, or, acted with a purpose to harm unrelated to any legitimate law enforcement objective when they shot SNOW multiple times, causing his death.

41.     Due directly to the Defendants' conduct which shocks the conscience, SNOW was shot and killed during a mental health crisis and was unarmed. Accordingly, Defendants, and each of them, directly and proximately caused SNOW's death. Additionally, SNOW was caused to needlessly suffer severe physical, psychological, and emotional pain and suffering in the moments leading up to his death, for which his MELISSA WALTON is entitled to recover damages.

42.     Therefore, the shooting and killing of SNOW by Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, shocks the conscience and has destroyed his familial relationship between Plaintiff MELISSA WALTON and SNOW further causing Plaintiff to permanently suffer the loss of his companionship, society, and material and moral support. The shooting and killing of SNOW by Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, violated the rights of Plaintiff to be free from unreasonable state interference in their relationship with SNOW, who was MELISSA WALTON's son.

43.     Accordingly, MELISSA WALTON, as successors-in-interest to SNOW, claims damages under 42 U.S.C. § 1988 for SNOW's loss of value of life, pre-death human suffering, and all attorneys' fees and costs yet incurred and yet to be incurred by MELISSA WALTON in presenting, maintaining, and prosecuting this action, under 42 U.S.C. § 1988.

44.     Further, the conduct of Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, willful, and conscious disregard of SNOW's rights and safety subjected him to cruel and unjust hardship in the moments leading up to and including his death. Therefore,

Defendants' conduct also amounted to a malicious and/or oppressive for which MELISSA WALTON is further entitled to recover punitive damages.

///

### THIRD CLAIM FOR RELIEF

### FOR MUNICIPAL LIABILITY - UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES

### (42 U.S.C. § 1983)

**(Plaintiff, as successor in interest, Against Defendants CITY and DOES 1-10)**

45.     Plaintiff repeats and re-alleges each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

46.     The present cause of action is brought under 42 U.S.C. § 1983, *Monell v. Dept. of Social Services*, and all other relevant case law and precedent, under which Defendant CITY is liable by way of the policies, customs, or directives that were substantial moving forces behind Plaintiff's constitutional violations.

47.     At all relevant times, Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive were acting in the course of their employment with the Defendant CITY, under color of law. The actions and omissions of Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive of particular rights guaranteed under the laws and Constitutions of the United States and Idaho, as set forth in the relevant claims for relief herein.

48.     Defendant CITY was and at all times herein mentioned has been a public entity and incorporated municipality duly authorized and existing as such in and under the laws of the State of Idaho. Defendant CITY, and its police department, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the CITY and its tactics, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance and the proper application of their powers of arrest by its rank and file, generally.

49.     At all times herein mentioned, Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive, were employees of the CITY acting under the CITY's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and

usages at all times herein mentioned encouraged the employment, deployment and retention of persons as peace officers who have a propensity for failing to protect citizens in custody, failing to provide safe conditions of confinement, dishonesty, cover-up, bias, and numerous other serious abuses of their duties as peace officers in the employment of the CITY.

50. On and for some time prior to October 27, 2021 (and continuing to the present date), Defendant CITY and its police department, acting with deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in Decedent SNOW's class, situation, and comparable position, knowingly maintained, enforced, and/or adopted policies, customs, and/or practices of:

A. Encouraging, accommodating, or ratifying conduct of officers such as Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive in failing to contact individuals, such as SNOW, in the proper manner during a mental health crisis;

B. Encouraging, accommodating, or ratifying shooting of individuals who are unarmed, or the like, despite such individuals not presenting a threat of death or serious bodily injury;

C. Encouraging, accommodating, or ratifying shooting of individuals after a perceived threat has been neutralized;

D. Encouraging, accommodating, or ratifying the shooting of residents as a first resort, instead of using less than lethal force options;

E. Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force instead of using less than lethal force options;

F. Encouraging, accommodating, or facilitating a "code of silence" among Boise Police Department officers/supervisors, pursuant to which false reports are generated, and excessive and unreasonable uses force are covered up or overlooked;

G. Inadequately supervising, training, and disciplining Boise Police Department police officers, including Defendants M. JACOBS and C. SNODDERLY and DOES 1-10, inclusive;

H. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Boise Police Department officers;

51. By reason of the forgoing policies, customs, and practices, Plaintiff SNOW were subjected to severe physical, psychological, and emotional pain and suffering, as outlined in the claims for relief alleged herein.

52. Plaintiffs are informed and believe and thereon allege that at the time of the aforementioned shooting, and long prior thereto, the CITY, and other supervisory officers thereof, as yet unknown to Plaintiff, failed to properly train, instruct, supervise, investigate, regulate, or discipline Defendants DOES 1-10, inclusive, and each of them. These failures and the aforementioned practices, policies, and customs were the substantial moving forces behind the harm and death of Plaintiff and Decedent, respectively. Clearly, the policies, practices, and customs implemented, maintained, and/or still tolerated by Defendants CITY were affirmatively linked to and were substantial moving forces behind the injuries of Plaintiffs and Decedent.

53. As such, these expressly adopted official policies or widespread, well-known, and longstanding practices or customs constitute standard operating procedures of the defendants CITY, which has resulted in repeated incidents of officer involved shootings and excessive force, against members of the general public. The aforesaid acts and omissions of Defendants were done knowingly, intentionally, depriving Plaintiffs and Decedent of their constitutional rights.

54. Defendants CITY, along with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite this knowledge, these Defendants condoned, tolerated, and through their actions and inactions did ratify such customs and practices. Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs, Decedent, and other individuals similarly situated.

55. Accordingly, Defendants CITY are liable to the respective Plaintiffs as set forth in the causes of action under 42 U.S.C. § 1983 herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants as follows:

A. For compensatory damages, for wrongful death including damages for the loss of Decedent's life-long love, companionship, comfort, care, assistance, protection, affection, society; moral support; and the loss of relationship with Decedent, including loss of society, familial relationship and companionship in an amount according to proof at the time of trial;

B. For compensatory damages, for survival damages for the mental, physical and emotional pain and suffering of Decedent in an amount according to proof at the time of trial;

C. For loss of financial support, sustenance and earning capacity in an amount according to proof at the time of trial;

D. For loss of gifts and benefits in an amount according to proof at the time of trial;

E. For Decedent's own pre-death human suffering;

F. For Decedent's own loss of value of life;

G. For punitive damages against the individual defendants in an amount to be proven at trial;

H. For reasonable costs of this suit and attorneys' fees, including pursuant to 42 U.S.C. § 1988;

I. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: October 26, 2023    CRAIG SWAPP & ASSOCIATES

*/s/Erin C. Dyer*
ERIN C. DYER
Attorney for Plaintiff

**LAW OFFICES OF HUMBERTO GUIZAR, APC**

By:    */s/Humberto Guizar*
HUMBERTO GUIZAR
CHRISTIAN CONTRERAS
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: October 26, 2023  **CRAIG SWAPP & ASSOCIATES**

*/s/Erin C. Dyer*
ERIN C. DYER
Attorney for Plaintiff


**LAW OFFICES OF HUMBERTO GUIZAR, APC**

By: */s/Humberto Guizar*
HUMBERTO GUIZAR
CHRISTIAN CONTRERAS
Attorney for Plaintiff